UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                      :

FREDERICK JONES,                                   :

                                                                      :      12 Civ. 9144 (PAE)

                                     Plaintiff,         :

                                                                        :      OPINION & ORDER

                -v-                                    :

CITY OF NEW YORK and ALLEN AFFORDABLE  :
HDFC,                                                         :

                                                                 Defendants.  :

------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Frederick Jones, proceeding *pro se*, brings claims against the City of New York (the "City") and Allen Affordable HDFC ("Allen"), under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA"), 42 U.S.C. §§ 4601 *et seq.*, the Due Process Clause of the Fourteenth Amendment, and 42 U.S.C. § 1983. The City moves for summary judgment. For the reasons that follow, the City's motion is granted. Jones's claims against Allen, which has not appeared in this case, are dismissed *sua sponte*.

I.     **Background**[1]

    A.     **Factual Background**

This is the latest in a series of lawsuits, all arising out of the same housing dispute, brought by Jones against various defendants. *See Jones v. U.S. Dep't of Hous. & Urban Dev. ("Jones II")*, No. 11 Civ. 846 (RJD)(JMA), 2012 WL 1940845, at *1 n.2 (E.D.N.Y. May 29, 2012) (summarizing Jones's various lawsuits in this District, the Eastern District of New York, and New York state courts); *see also* Georges Decl., Ex. P–U.

Jones was, until 2012, a resident of a rent-stabilized apartment at 107-05 Sutphin Boulevard in Jamaica, New York (the "Building"). Compl. ¶¶ 1–2. In 2001, the New York City Department of Housing Preservation and Development ("HPD") selected the Building for its Neighborhood Redevelopment Program (the "NRP"), meaning that the Building would be conveyed to a developer for rehabilitation and development as affordable rental housing. Georges Decl. Ex. B–C. On October 19, 2000, residents were notified of the possibility of the Building's placement in NRP, and on November 5, 2001, residents were notified that the Building had been selected for inclusion in the NRP. Georges Decl. Ex. B–C.

The NRP is funded by the City and the federal government and from the proceeds of sales of federal low income housing tax credits. Def. 56.1 ¶ 2. When a building is placed in the NRP, existing tenants are relocated while construction proceeds; that relocation, however, is temporary. Tenants are entitled to return to renovated apartments within their building after the

---

[1] The Court's account of the facts is drawn from the Complaint (Dkt. 1) ("Compl."); the City's Local Rule 56.1 Statement (Dkt. 12) ("Def. 56.1"); the Declaration of Jasmine Georges (Dkt. 14) ("Georges Decl."), and the exhibits attached thereto; and the Declaration of Aisha Crumpton ("Crumpton Decl."). Jones has not filed an opposing Local Rule 56.1 Statement, despite having been served by counsel for the City, on March 13, 2013, with appropriate notice under Local Rule 56.2. *See* Dkt. 16. Nevertheless, in light of Jones's *pro se* status, the Court conducts its own independent review of the record. *See Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 406 n.1 (S.D.N.Y. 2012); *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009).

renovations are complete. *Id.* ¶¶ 3–4 (citing Georges Decl. Ex. E); *see also* N.Y.C. Rules & Regs. §§ 30-01 *et seq*. By December 14, 2005, all of the Building's residents, except for Jones, had been successfully relocated. Georges Decl. Ex. E. In 2006, the City sold the Building to Allen, a community-based not-for-profit organization, which took over as the developer pursuant to the NRP. Def. 56.1 ¶ 7 (citing Georges Decl. Ex. D).

Between 2006 and 2012, the condition of the Building deteriorated. On January 11, 2012, the New York Department of Buildings ("DOB") inspected the Building at the request of the Fire Department, due to a major water leak. Georges Decl. Ex. I. The DOB inspector observed that: a section of the floor was open on the first floor of the Building; the ceilings were missing in areas due to water damage; black mold was present throughout the Building; and three inches of stagnant water rested on the cellar floor. *Id.* Ex. F. As a result, the DOB issued to Allen a notice of violation for failure to maintain the Building in compliance with City regulations and directed Allen to seal the building immediately and repair the defects. *Id.* On January 12, 2012, the DOB issued an Emergency Declaration to the same effect. *Id.* Ex. G. On January 20, 2012, the DOB inspected the Building again and found structural deficiencies rendering it unsafe for occupation. *Id.* Ex. I. On that date, the DOB placed a vacate order on the Building, prohibiting reentry until the hazardous conditions are repaired. *Id.* At the time, Jones remained the sole occupant of the Building. Def. 56.1 ¶ 19.

When tenants of a privately owned building are displaced by a vacate order, HPD is responsible for providing relocation services for the displaced tenants. *See* N.Y.C. Admin. Code § 26-301(1)(a)(v). HPD's Emergency Housing Services Bureau ("EHS") provides such services for relocated individuals ("relocatees"). Def. 56.1 ¶ 22. EHS offers relocatees temporary shelter; helps them submit applications to the City Housing Authority ("NYCHA"); pays the cost

3

of the relocatee's temporary shelter up to $12 per day; and refers the relocatee to at least three "Standard Apartments," which meet certain criteria for habitability. *Id.* ¶¶ 22–27; *see generally* 28 N.Y.C. Rules & Regs. § 18-01 (providing for these services). However, if the relocatee unjustly refuses three Standard Apartments, his temporary shelter benefits may be terminated upon notice and hearing. *See id.* § 18-01(g).

After the vacate order was placed on the Building, Jones registered for shelter and location assistance. *See* Crumpton Decl. ¶ 7. On January 31, 2012, he was transferred to a shelter at the Queens YMCA. *Id.*[2] On February 14, 2012, Jones met with EHS staff, who gave him the opportunity to complete applications for relocation assistance; Jones refused to complete the applications, stating that doing so would interfere with his rights to return to the Building. *Id.* ¶ 8. On July 5, 2012, Jones again met with EHS staff and refused to complete applications for relocation assistance. *Id.* ¶ 9. In October 2012, Jones twice met with EHS staff, refused to complete applications for relocation assistance, and was informed that his continued refusal could result in the termination of his shelter benefits. *Id.* ¶¶ 11–12. On October 24, 2012, Jones requested that he be referred for a termination hearing. *Id.* ¶ 12. On February 4, 2013, a hearing was held to determine whether to terminate Jones's shelter and relocation benefits based on his continued refusal to seek replacement housing. *Id.* ¶ 13. During that hearing, Jones finally completed the applications for relocation assistance. *Id.* On February 21, 2013, the termination hearing resumed. Jones was again offered apartments for temporary relocation and again refused. *Id.* ¶ 15. At the hearing, Jones indicated that he would not be interested in other apartments that became available. *Id.*

---

[2] In October 2012, Jones agreed to be transferred to a shelter on West Broadway. *See* Crumpton Decl. ¶ 11.

In a letter dated April 27, 2013, Jones informed the Court that his shelter benefits had been terminated. *See* Dkt. 17. Jones's letter attaches a copy of the hearing officer's summary of the February 4 and 21, 2013 proceedings and the hearing officer's findings of fact; however, that summary does not recite a decision as to Jones's benefits. *See id.* at 4–10. The summary is dated April 22, 2013. *Id.* at 10.

On February 1, 2012, in a separate proceeding in housing court, Allen offered Jones temporary relocation in three separate buildings and offered Jones a rent-stabilized lease to return to his apartment in the Building once renovations are complete. Georges Decl. Ex. K. Jones refused, and the housing court judge dismissed the case. *Id.* On February 15, 2013, Allen sent Jones a letter offering him two new apartments; he did not respond. Crumpton Decl. ¶ 14.

Allen is currently in the process of selling the Building to MHANY Management Inc., which will take over responsibility for redevelopment of the Building under the NRP. Def. 56.1 ¶ 47. MHANY is in the process of securing the necessary funds for the rehabilitation, and has kept tenants, including Jones, apprised on the status of the redevelopment. *See id.* ¶¶ 48–56 (citing Georges Decl. Ex. M–N). At a July 24, 2012 meeting, MHANY informed tenants of the Building that rehabilitation would begin in December 2012 and would likely be completed by December 2013, and that they would be entitled to return to the building after the rehabilitation was completed. Georges Decl. Ex. M. On August 10, 2012, HPD informed tenants that there might be a rent increase upon completion of the construction, but that rental subsidies may be available to eligible tenants. Georges Decl. Ex. O.

### B. Procedural History

On December 17, 2012, Jones filed the Complaint. Dkt. 1. It alleges that, after Jones was displaced from his apartment, defendants failed to comply with a number of alleged duties

under the URA, such as: to submit a relocation plan for approval before displacing Jones; to give Jones a firm date when he could return to his apartment; to offer Jones a comparable replacement dwelling; to have Jones's apartment inspected; and to assign someone to explain to Jones the relocation benefits for which he is eligible.  Compl. ¶¶ 5–9.  Jones also alleges that HPD failed in its alleged obligation to provide relocation housing for Jones, and that HPD improperly denied Jones placement benefits and did not inform him how to appeal the decision.  *Id.* ¶¶ 10–12.  Jones states that he is currently living in a homeless shelter and is "being deprived of life sustaining benefits."  *Id.* ¶ 13.

On December 17, 2012, Jones served both defendants.  Dkt. 2–3.  On February 7, 2013, the City filed an Answer.  Dkt. 6.  Allen has not filed an answer or other responsive pleading.

On March 7, 2013, the Court held an initial pretrial conference.  Only counsel for the City was present.  *See* Dkt. 9.  At that conference, counsel for the City requested leave to move for summary judgment.  On March 8, 2013, the Court issued an Order setting a briefing schedule for the City's motion and directing the City to serve Jones with that Order, the City's moving papers, and notice of summary judgment procedures pursuant to Local Rule 56.2.  *Id.*  On March 14, 2013, the City filed its motion for summary judgment.  Dkt. 10–14.  On the same date, counsel for the City personally served Jones with the City's moving papers, a copy of the Court's March 8, 2013 Order, and a Local Rule 56.2 Notice to *Pro Se* Litigant Opposing Summary Judgment.  Dkt. 16.  The notice provided to Jones stated, in pertinent part:

> City defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  This means that the City defendant has asked the Court to decide this case without a trial, based on written materials . . . .  You are warned that the Court may treat this motion as a motion for summary judgment under Rule 56 . . . . THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT TRIAL IF YOU DO NOT RESPOND TO THIS MOTION by filing sworn affidavits or other papers as required by Rule 56(e).

The notice also attaches the full text of Rule 56 and Local Rule 56.1.

On April 29, 2013, the Court received a letter from Jones, dated April 27, 2013, requesting an extension of time to oppose the City's motion. Dkt. 17. Jones's letter also stated that he was considering filing a retaliation complaint on the basis of the termination of his shelter benefits. *Id.* On May 1, 2013, the Court issued an Order granting Jones an extension, until June 14, 2013, of the time in which to file his opposition to the City's motion. Dkt. 18. The Order also reminded Jones that he was free to seek leave to amend his complaint to add a retaliation claim if he wished to do so. *Id.* The Court has not received any further correspondence from Jones. He has not filed an opposition to the City's motion.

## II.     Applicable Legal Standard

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are

genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

In considering the City's motion, the Court is mindful that Jones is a *pro se* litigant whose submissions must be construed to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and emphasis omitted). However, this forgiving standard "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (citation omitted).

Where, as here, a party has not opposed a motion for summary judgment, that does not obviate the need for the Court to conduct a thorough review of the non-movant's claims: "Although the failure to respond may allow the district court to accept the movant's factual assertions as true, the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law. Accordingly, . . . courts, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (citations omitted).

## III. Discussion

The Court construes Jones's Complaint to raise two claims: (1) that he has been permanently displaced from his apartment without receiving the benefits owed to him under the URA; and (2) that he has been deprived of his Due Process rights. The Court addresses each claim, in turn.

**A.     URA**

The URA provides compensation and other benefits to individuals and businesses displaced in the course of federally funded projects. 42 U.S.C. § 4621; *see Supreme Oil Co. v. Metro. Transp. Auth.*, 157 F.3d 148, 150 (2d Cir. 1998). These benefits are available to "displaced person[s]." That term is defined, in pertinent part, as:

> any person who moves from real property, or moves his personal property from real property . . . on which such person is a residential tenant . . . as a direct result of rehabilitation . . . under a program or project undertaken by a Federal Agency or with Federal financial assistance in any case in which the head of the displacing agency determines that such displacement is *permanent*.

42 U.S.C. § 4601(6)(a)(i)(II) (emphasis added).

Here, Jones alleges that "Defendants has displaced plaintiff from his apartment and Failed to give him a promise date when he can return to His apartment, This is a permanent displacement [*sic*]." Compl. ¶ 6. However, there is no evidence that Jones's displacement was permanent. Quite the contrary, the undisputed evidence reflects that Jones was repeatedly told that he would be able to return to the Building when the rehabilitation was complete and the Building was once again safe to inhabit. *See* Georges Decl. Ex. E ("you have the right to return to a newly renovated unit that is appropriate for your family size"); *id.* Ex. K (Allen offers Jones rent-stabilized lease in the Building); *id.* Ex. M–O. Jones was informed that the estimated completion date for the Building's rehabilitation is December 2013. *Id.* Ex. M. Because Jones's displacement is temporary, he is not entitled to benefits under the URA. *See McQueen v. Phila. Hous. Auth.*, No. Civ.A. 02-8941, 2003 WL 22533726, at *5 (E.D. Pa. Sept. 26, 2003). Moreover, as Chief Judge Preska held when dismissing Jones's URA claims against HPD in one of Jones's prior lawsuits, the URA does not create a private right of action to challenge the denial of benefits; rather, a claim under the Administrative Procedure Act ("APA") is the sole means

9

for pursuing such a claim.  *Jones v. Dep't of Hous. Pres. & Dev. ("Jones I")*, No. 06 Civ. 2085 (LAP), 2008 WL 5155725, at *2 (S.D.N.Y. Dec. 8, 2008) (citing *Ackerley Commc'ns of Fla., Inc. v. Henderson*, 881 F.2d 990, 992–93 (11th Cir. 1989), and *Wallace v. Chi. Hous. Auth.*, 298 F. Supp. 2d 710, 723 (N.D. Ill. 2003)); *see Supreme Oil*, 157 F.3d at 151 (reviewing claim for denial of URA benefits under APA).

Although Allen has not appeared in this action, Jones's URA claim against it is also dismissed.  Jones previously brought this precise claim against Allen, and summary judgment was granted in Allen's favor.  *See Jones I*, 2008 WL 5155725, at *1–2.  This claim is therefore barred by *res judicata*.  *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 112 (2d Cir. 2006) ("Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." (citation omitted)).  *Sua sponte* dismissal on this ground is appropriate here, because Jones was given notice and an opportunity to be heard on these claims.  *See Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.6 (2d Cir. 1990); *Jones II*, 2012 WL 1940845, at *2–3 (dismissing, *sua sponte*, Jones's redundant claims against Allen as barred by *res judicata*).

  **B.** **Due Process**

Jones also alleges that he was deprived of his rights under the Due Process Clause of the Fourteenth Amendment, "[b]ased on deprivation of benefits, deprivation of procedural and substantive safeguards, Negligence and Callous-Indifference to plaintiff."  Compl. at 1.  Although the deprivation alleged primarily concerns the benefits that Jones was allegedly entitled to under the URA, *see* Compl. ¶¶ 5–12, the Court construes Jones to also be alleging improper denial of the relocation services and shelter benefits owed to him under N.Y.C. Admin.

10

Code § 26-301(1)(a)(v).  *See* Compl. ¶ 13 ("Plaintiff is currently living in a homeless shelter and Plaintiff is being deprived of life sustaining benefits.").

To the extent Jones is alleging a procedural due process claim, that claim is deficient.  "A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process."  *See Bryant v. N.Y. State Dep't of Educ.*, 692 F.3d 202, 218 (2d Cir. 2012).  Even assuming that Jones had suffered a deprivation of a property interest as a result of state action, he was provided with adequate process.  After the vacate order was placed on the Building and Jones was relocated to a shelter, EHS staff repeatedly sought to help him apply for relocation services, but Jones refused to complete the requisite applications, even when warned that such refusal could lead to the termination of his shelter benefits.  *See* Crumpton Decl. ¶¶ 8–12.  Instead, on October 24, 2012, Jones requested a termination hearing.  *Id.* ¶ 12.  In February 2013—after Jones's Complaint was filed, but before the filing of the City's motion—Jones was given such a hearing.  *Id.* ¶¶ 13, 15.  At that hearing, Jones testified, presented evidence, and cross-examined the HPD's witnesses.  *See* Dkt. 17.  It is not clear from the copy of the hearing officer's summary submitted by Jones whether Jones's benefits were indeed terminated, but the Court credits Jones's assertion that they were.  Nevertheless, on the record before the Court, Jones was given adequate process.  *See generally Mathews v. Eldridge*, 474 U.S. 319 (1976).

To the extent Jones is alleging a substantive due process claim, it fares no better.  To succeed on such a claim, Jones must demonstrate "governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).  "While the measure of what is conscience shocking is no calibrated yard stick," *Lewis*, 523 U.S.

at 847, the Second Circuit has stated that "malicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience" because "[s]uch acts by their very nature offend our fundamental democratic notions of fair play, ordered liberty and human decency," *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir. 2001). There is no evidence of such conduct here. The record evidence reflects instead that EHS staff repeatedly attempted to assist Jones in obtaining relocation services, but that Jones refused to cooperate with these efforts.[3]

## CONCLUSION

The City's motion for summary judgment is granted. Jones's claims against Allen are dismissed, *sua sponte*. The Court certifies, pursuant to 28 U.S.C. § 1915(a) (3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is directed to terminate the motion at docket number 10 and to close the case.

SO ORDERED.

*Paul A. Engelmayer*
───────────────────
Paul A. Engelmayer
United States District Judge

Dated: August 8, 2013
       New York, New York

---

[3] To the extent Jones brings his § 1983 claim against Allen, a private entity, it also is dismissed. There is no evidence that Allen deprived Jones of any right while acting under color of state law or in concert with a state actor. *See Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) ("Section 1983 addresses only those injuries caused by state actors or those acting under color of state law. A private defendant may be held liable only as a willful participant in joint activity with the State or its agents." (citations omitted)).

12